IN THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA

v.  NO. 3:21-mj-2689

JAMES COWAN

**ORDER OF DETENTION PENDING TRIAL**

For the reasons discussed in detail below, the government's motion for detention of the defendant James Cowan until trial (Docket No. 3) is GRANTED.

Pursuant to Fed. R. Crim. P. 5.1[1] and the provisions of the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, a preliminary hearing and detention hearing was held in this case on February 16, 2023. The defendant appeared with his counsel, Assistant Federal Public Defenders Jessica Dragonetti and Mary Kathryn Harcombe. Assistant U.S. Attorney Rob McGuire appeared for the government. The complaint in this case alleges that the defendant committed the following offenses: previously convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924; possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); and, possession of controlled substances with intent to distribute (drug trafficking) in violation of 21 U.S.C. § 841(a)(1).

The Court heard the testimony of ATF Special Agent Kyle Rhoades as to probable cause and detention. Upon a finding of probable cause, as discussed below, the Court heard testimony presented by the defendant in rebuttal to the presumption of detention from the defendant's aunt Gwendolyn Childress, who testified to the defendant's personal circumstances and her willingness to be a third-party custodian. The Court also heard testimony from Joe Umberger, a case management with the 413 Strong program about that program and in support of the defendant's release to apply for admission into the program. Following the Court's finding that the defendant rebutted the presumption of detention, the government presented testimony of Sgt. Chris Dickerson, with the Metro Nashville Police Department, as to detention. The Court additionally considered the report of the Office of Probation and Pretrial Services recommending detention. This

---

[1] Unless otherwise noted, all references to rules are to the Federal Rules of Criminal Procedure.

order supplements the Court's findings of fact and conclusions of law stated more fully on the record during the hearing, which are incorporated as if set out fully herein. For the reasons stated on the record and detailed below, the Court finds probable cause for the offenses charged in the complaint.

**Legal Standards and Analysis**

After hearing the government's proof in support of a complaint, the Court has two options. If the Court finds probable cause to believe that the charged offenses were committed and that the defendant committed the offenses, the Court must, under Rule 5.1(e), require the defendant to appear for further proceedings. If, however, the Court finds no probable cause that the offenses alleged in the complaint were committed or no probable cause that the defendant committed the offenses the Court must, under Rule 5.1(f), dismiss the complaint and discharge the defendant.

"Probable cause" is not defined either by statute or the rules of criminal procedure. Some courts have described probable cause as "evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *United States v. Infante*, 782 F.Supp.2d 815, 817-18 (D. Ariz. 2010) (citations omitted). The Supreme Court has noted that "probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules. *Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003) (quoting *Illinois v. Gates*, 462, 213, 232 (1983)).

"Contrary to what its name might seem to suggest, probable cause demands even less than probability." *United States v. Rodriquez*, 460 F.Supp.2d 902, 906 (S.D. Ind. 2006) (quoting *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000)). Probable cause does, however, require more than bare suspicion. *Id*. Ultimately, the probable cause quantum is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. A probable cause determination generally requires a practical, common-sense assessment of the involved facts based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. at 238. Put simply, probable cause may be based on a fair probability that the defensdant committed the offense charged. *Id*. Moreover, probable cause is a relatively low bar for the government. *Kaley v. United States*, 571 U.S. 320, 338 (2014) ("Probable cause, we have often told litigants, is not a high bar[.]")

Under the Bail Reform Act, 18 U.S.C. §§ 3142 *et seq.*, a court can order pretrial detention only after a hearing and only in certain eligible cases. 18 U.S.C. § 3142(f); *see also United States v. Salerno*, 481 U.S. 739 (1987) (upholding Bail Reform Act). From the

testimony presented, the Court finds probable cause for the offenses of which the defendant is charged in the complaint, namely, unlawful possession of a firearm by a previously convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), and possession of controlled substances with intent to distribute (drug trafficking) in violation of 21 U.S.C. § 841(a)(1). Having found probable cause, the government may request pretrial detention because this case involves an offense for which the maximum penalty is death, 18 U.S.C. § 3142(f)(1)(B), and a drug offense for which the maximum prison sentence is at least 10 years, 18 U.S.C. § 3142(f)(1)(C), and also includes a felony charge that "involves the possession of a firearm," 18 U.S.C. § 3142(f)(1)(E).

A defendant may be detained pending trial only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2)(b). As to risk of flight, the government must carry its burden by a preponderance of the evidence. *United States v. Hinton*, 113 F.App'x 76, 77 (6th Cir. 2004). With respect to dangerousness, the government must present clear and convincing evidence to prevail. *Stone*, 608 F.3d at 946 (citing 18 U.S.C. § 3142(f)(2)(B)). Clear and convincing evidence requires a firm belief or abiding conviction that what is alleged is highly probable. *United States v. Beard*, No. 1:21-MJ-02082, 2021 WL 1111240, at *5 (N.D. Ohio Mar. 23, 2021) (internal citations omitted). The analyses of dangerousness and risk of flight are distinct, and conditions that could adequately address flight will not necessarily mitigate danger to a sufficient degree. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001).

"The default position of the law … is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The default is modified however for defendants accused of certain crimes, including those of which the defendant is charged here, in which case there is a presumption in favor of detention. 18 U.S.C. § 3142(e)(3). If there is probable cause to believe the defendant used a firearm in furtherance of a drug trafficking crime, a presumption arises as to both dangerousness and flight risk. Weinberg, John L., *Federal Bail and Detention Handbook*, § 6:11.2 (2017).

If the presumption applies, the defendant must produce evidence that he is neither a danger to the community nor a risk of flight. *Stone*, 608 F.3d at 945. While this "burden of production is not heavy, [the defendant] must introduce at least some evidence." *Id.* (internal quotation marks omitted). If the defendant satisfies his burden of production, the presumption does not evaporate, but becomes one of several factors that must be weighed by the court, keeping in mind that "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained

3

prior to trial." *Id.* (internal citations omitted). Ultimately, the government retains the burden of persuasion. *Id*. (internal citations omitted).

In determining whether pretrial detention is appropriate, the factors the court must consider are: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)–(4). The nature and circumstances of the offense include whether it involves a controlled substance or a firearm. 18 U.S.C. § 3142(g)(1). The weight of the evidence goes only to the likelihood that the defendant will pose a danger to the community or a risk of flight and is not a pretrial determination of guilt. *Stone*, 608 F.3d at 948. In weighing the strength of the evidence, the court may not modify or limit the defendant's presumption of innocence. 18 U.S.C. § 3142(j). The history and characteristics of a defendant include "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Additionally, they include whether the defendant was on probation or parole at the time he committed the offense. 18 U.S.C. § 3142(g)(3)(B).

The Court finds that the defendant rebutted the presumption of detention with the testimony of the defendant's aunt, Gwendolyn Childress, and her willingness to be a third-party custodian. The Court was highly impressed with Ms. Childress, whom the Court considers to be credible and sincere. Notwithstanding the strength of Ms. Childress's testimony, however, the Court finds that the government demonstrated by clear and convincing evidence that the defendant's release poses a danger to the community that cannot be reasonably mitigated by conditions. The government also proved by a preponderance of the evidence that no condition or combination of conditions of release would reasonably assure the defendant's appearance as required.

The Court provided its analysis of the Section 3142(g) factors and detailed findings in open court at the end of the detention hearing, which are incorporated by reference herein.

### **Nature and circumstances of the offense charged**

As noted by the Sixth Circuit, for purposes of the Bail Reform Act, Congress thought it was especially significant if the nature and circumstances of the offense charged involve a controlled substance or a firearm, both of which are involved here. *Stone*, 608 F.3d at 947; *see also* 18 U.S.C. § 3142(g)(1). Additionally, the entire circumstances of the charged offenses must be considered by the Court. In this case, those circumstances include that, when the defendant was arrested, a Glock handgun with a loaded extended

4

magazine and other rounds of ammunition were found in the car driven by the defendant. In the same backpack found in that car, another weapon and distribution quantities of marijuana were also found.  According to the testimony of ATF Special Agent Rhoades,  at the time of his arrest, the defendant had on his person 238 pills that later tested as Etizolam, similar to Xanax, 5.3 grams of (lab tested) fentanyl, and more than $2000 in cash. The defendant was also driving a rental vehicle that was rented in the name of an unknown individual with a California address.[2] The defendant was not arrested at his last known address because, according to testimony, he could not be located there.  Rather, he was arrested, after leaving a motel, in the parking lot of his girlfriend's apartment building. Prior to the defendant's arrest, and after the defendant's girlfriend downloaded a screenshot of the defendant being placed on the TBI Most Wanted List as a suspect in a homicide investigation, they exchanged text messages about the defendant finding a motel that accepted cash, and other ways for him to elude detection.[3]  Overall, this factor, particularly given the presumption of dangerousness, weighs strongly in favor of detention.

---

[2] As discussed below, the car that the defendant was driving at the time of his arrest was rented in the same name as the car that was known to be driven by an associate of the defendant's, Devaunte Hill, during the murder of Caitlyn Kaufman in January of 2021.

[3] When making a detention determination, a court may consider the defendant's prior uncharged conduct and arrests or indictments that did not result in convictions – albeit with proper weight, including for reliability – because the analysis under § 3142(g) is concerned with the practical assessment of the defendant's dangerousness, rather than an adjudication of guilt for a particular offense.  *See e.g. United States v.* Gaston, Cause No. 2:21-CR-36, 2021 WL 1170201, at *5 (N.D. Ind. Mar. 26, 2021) (collection of cases); *United States v. Tolbert*, No. 3:09-CR-56, No. 3:10-CR-30, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (collection of cases).  The Court is mindful in this case that the defendant was acquitted by a jury of the charge of murdering Ms. Kaufman.  For that reason, the Court has not taken into consideration the specific event of Ms. Kaufman's murder in January 2021.  The Court has considered other circumstances that are relevant to the assessment of dangerousness in this case, such as the link between the car used in that crime and the car that the defendant was driving when arrested, the communications between the defendant and his girlfriend following the crime when the defendant was publicly identified as a suspect and placed on the TBI Most Wanted List, and the defendant's conduct between the time of the murder and his arrest.

**Weight of evidence of dangerousness**

The purpose of a detention hearing is to weigh the evidence of dangerousness. *See Stone*, 608 F.3d at 948. The evidence of dangerousness here, including based on the nature and circumstances of the offense charged, is significant. The combination of distribution quantities of drugs and unlawful firearms poses a substantial threat to the community. Among the narcotics found on the defendant's person when he was arrested was fentanyl. The extremely dangerous nature of fentanyl has been remarked upon by multiple courts, including the Sixth Circuit. *United States v. Harris*, 774 F.App'x 937, 941 (6th Cir. 2019) (enhanced penalty for punishing a mixture of fentanyl and heroin as fentanyl alone was within rational sentencing scheme based on fentanyl's unique and extreme potency).[4] Fentanyl poses an "incredible threat to community members." *United States v. Simms*, 2019 WL 7049930, at *6 (N.D. Ohio Dec. 23, 2019); *see also United States v. Brown*, 2017 WL 4883375, at *3 (W.D. Penn. Oct. 30, 2017) ("The court is mindful that the distribution of fentanyl, in particular, has recently resulted in serious harm to the community ..."). Sgt. Dickerson testified that the defendant's phone contained text messages and notes to himself about money that he was owed for drug sales, potential sources for drugs, and where to get guns.[5] Further, when arrested, defendant was driving a rental vehicle in the name of an unknown individual with a California address. He was not arrested at his home address because he could not be found there and he was, as described above, actively attempting to elude being found. Additionally, although the defendant disputes that he is a member of the Crips gang, photos were taken during the defendant's birthday party in December 2020 with a clear theme of Crips gang affiliation: the party decorations were in Crips colors and the defendant's birthday cake was decorated with the word "Crip." Further, the defendant's prior criminal history includes drug and gun charges. The defendant's criminal history also includes a pattern of probation violations, which indicates that the defendant is either unwilling or unable to comply with court-imposed restrictions on his conduct. For all these reasons, this factor weighs strongly in favor of detention.

---

[4] *See also United States v. Taylor*, 449 F.Supp.3d 668, 673 (E.D. Ky. 2020) (fentanyl is an "exceptionally dangerous drug"); *United States v. Marshall*, 2020 WL 5369038, at *3 (E.D. Mich. Sept. 8, 2020) (describing fentanyl as an "extremely dangerous controlled substance that is 50 to 100 times more potent than morphine."); *United States v. Rivera*, 2020 WL 2521269, at *1 (D. Mass. Apr. 20, 2020) (describing fentanyl as a "highly addictive and dangerous drug"); *United States v. Reuer*, 2019 WL 1012187, at *4 (D. S.D. Mar. 4, 2019) (lethal dose of fentanyl is approximately 2 to 3 milligrams, meaning that 4 grams is equivalent to between 1,333 and 2000 lethal doses).

[5] According to Sgt. Dickerson, the defendant began using this phone and stopped using a prior phone that evidenced his association with Davaunte Hill after the murder of Ms. Kaufman.

### History and characteristics of the person

The next factor directs consideration of a defendant's history and characteristics, which include his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Here, the defendant has strong ties to this community, as evidenced by the testimony of his aunt and the showing of support by family members who attended the detention hearing. However, there is little evidence that, prior to his arrest on the murder charge, the defendant held a stable job or had a stable residence, despite being 28 years old. The defendant has prior charges and convictions for drugs and guns. The defendant also has a history of new charges while he was on bond or release for prior convictions or with already pending charges. The defendant was charged as an adult for robbery when he was 17 years old, in connection with which he committed several probation violations, as he also did for a later conviction on a drugs and gun charges. As noted by a sister court in Kentucky,

> almost any conditional release ultimately depends on a court's assessment of a defendant's good faith intentions and predicted compliance with conditions imposed. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (evaluating predicted good faith compliance as critical release component). In the end, any detention decision ultimately turns on the efficacy of potential conditions, which in turn hinges substantially on predicted compliance by a defendant. *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting "critical flaw" in set of proposed, strict release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance.").

*United States v. Cornish*, 449 F. Supp. 3d 681, 684 (E.D. Ky. 2020). Because of his prior history, the Court cannot find that the defendant is any more likely to now comply with conditions of release. Further, the defendant's entire circumstances outweigh any considerations of his family and community ties. Overall, this factor weighs in favor of detention.

### Nature and serious of danger from the person's release

The final factor the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g)(4). "Consideration of this factor encompasses much of the analysis set forth above, but it is broader in scope … [as it] requires the Court to engage

7

in an open-ended assessment of the 'seriousness' of the risk to public safety." *United States v. Taylor*, 289 F.Supp.3d 55, 70 (D. D.C. 2018). Many of the same reasons discussed above regarding the other factors also weight this factor in favor of detention. Most compelling is the evidence of the defendant's current and prior drug and gun charges, which pose a significant threat to the well-being of the community. Guns and drugs are a dangerous combination and one which the Court finds cannot be mitigated by conditions of release because of the defendant's disregard for court-imposed restrictions on his conduct, particularly given the lengths to which the defendant went to elude discovery in January 2021. This factor weighs strongly in favor of detention.

Upon consideration of the totality of the circumstances, the Court finds the § 3142(g) factors overall weigh against the defendant's release and in favor of detention. For the stated reasons, the government proved the defendant is an irremediable danger risk on facts supported by clear and convincing evidence.

Even without regard to dangerousness, the government proved by a preponderance of the evidence that there are not conditions of release the Court can fashion to reasonably assure the defendant's appearance. If convicted, the defendant faces significant penalties, including, for some charged offenses, mandatory minimum sentences and up to life in prison.[6] The defendant has already demonstrated a propensity to conceal himself from law enforcement, with the aid of others in his life. These facts, supported by a preponderance of the evidence, compel detention.

---

[6] *See e.g. United States v. El-Hage*, 233 F.3d 74, 80 (2nd Cir. 2000) (prospect of life imprisonment provides strong motive to flee); *see also United States v. Sabhnani*, 493 F.3d 63, 66-67, 76 (2nd Cir. 2007) (noting defendants had a strong motive to flee in part because they were charged with a serious crime and, if convicted, they would likely face a lengthy sentence of incarceration—a statutory maximum of 40 years imprisonment and a Guidelines range of 210 to 262 months); *United States v. Khusanov*, 731 Fed. App'x 19, 21 (2nd Cir. 2018) (no error for district court to conclude that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee."); *United States v. Khraizat*, No. 00-2128, 2000 WL 17669637, at *2 (6th Cir. Nov. 17, 2000) (the panel considered defendant's "length[y] sentence if convicted"); *United States v. Brown*, 538 F. Supp. 3d 154, 166, 172 (D.D.C. 2021) (severity of possible punishment could give defendant a strong incentive to flee); *United States v. Edwards*, 2021 WL 796089, at *2 (E.D.N.Y. Mar. 2, 2021) ("When faced with the possibility of a significant prison term, defendants have a strong incentive to flee."); *United States v. Xiaorong You*, No. 2:19-CR-14, 2019 WL 2426659, at *3 (E.D. Tenn. June 10, 2019) (prospect of lengthy sentence if convicted provided motive for defendant to flee).

Taking all these factors into consideration, the Court finds the government has met its burden of showing by clear and convincing evidence as to dangerousness and by a preponderance of the evidence as to flight that there are not conditions of release that can reasonably assure the safety of the community and the defendant's appearance.

## Directions Regarding Detention

The defendant is remanded to the custody of the United States Attorney or his designee for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purposes of an appearance in connection with a court proceeding.

## Appeals

The defendant was advised in open court of his right to seek review of detention pursuant to 18 U.S.C. § 3145 and he is again reminded here.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge